McMILLIAN, Circuit Judge, concurring in part and dissenting in part.

I agree that the district court correctly treated appellant's 42 U.S.C. § 1983 *claim for restoration of good-time credit* as a petition for writ of habeas corpus, *Preiser v. Rodriguez*, 411 U.S. 475, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973), and thus correctly dismissed the claim for restoration of good-time credit for failure to exhaust available state remedies. However, for the reasons discussed by Judge Arnold in his dissenting opinion in *Offet v. Solem*, 823 F.2d 1256, 1261–63 (8th Cir.1987), I do not agree that

the district court correctly dismissed appellant's 42 U.S.C. § 1983 *claim for damages and for prospective injunctive relief.*

Accordingly, I would modify that part of the district court's order dismissing the claim for restoration of good-time credit to dismiss without prejudice and would affirm that part of the district court order as modified. I would reverse, however, the district court's dismissal of appellant's claim for damages and for prospective injunctive relief and would leave to the district court on remand the question whether to abstain from proceeding with those claims until appellant has exhausted his available state remedies.

UNITED STATES of America, Appellee,

v.

Douglas Wayne BROWN, Appellant.

No. 86–2540.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 8, 1987.

Decided Dec. 10, 1987.

Douglas Wayne Brown, pro se.

Linda R. Reade, Asst. U.S. Atty., Des Moines, Iowa, for appellee.

Before ARNOLD, Circuit Judge, HENLEY, Senior Circuit Judge, and JOHN R. GIBSON, Circuit Judge.

ARNOLD, Circuit Judge.

Douglas Wayne Brown, an inmate in a federal penitentiary at Lompoc, California, appeals from the order of the District Court applying $124,729.53, which was seized from Brown and an associate, in satisfaction of a bail-forfeiture judgment in favor of the United States. We hold that the District Court had jurisdiction and that use of the money to satisfy the judgment of forfeiture was proper in principle. We remand, however, for findings of fact as to whether money owned by Brown was used

to satisfy a judgment entered against his co-defendant.

### I.

Brown and an associate, David Lee Grandstaff, were arrested July 28, 1980, on federal warrants for charges including interstate transportation of stolen property. Bail was set at $70,000 for each man. Brown and Grandstaff each posted a 10% surety bond and was released. Brown and Grandstaff did not appear for their scheduled trial date of February 9, 1981.

On the government's motion, the District Court entered an order on March 11, 1981, declaring Brown's and Grandstaff's respective bail forfeited pursuant to Fed.R.Crim. P. 46(e)(1). The Court entered judgment against each man on April 16, 1981, and ordered the $7,000 on deposit for each applied against the judgments. The lawfulness of this judgment of forfeiture is not contested on this appeal.

Brown and Grandstaff were later arrested in Denver in September 1981. Authorities seized $187,282 in their possession at that time. The money was deposited in the Federal Reserve Bank in Los Angeles. The government believed that this money might have been part of $3.3 million stolen from the First National Bank of Tucson, Arizona in April 1981. Pursuant to plea agreements, both Brown and Grandstaff pleaded guilty to the original charges and were sentenced to ten years in prison. They were not charged with bank robbery.

In the spring of 1984, the Internal Revenue Service (IRS) made a jeopardy assessment against Brown and Grandstaff and levied on the cash that had been seized from them. The United States Attorney for the Southern District of Iowa then requested that the IRS turn over $124,729.53

to the Department of Justice, in order to satisfy the bail-forfeiture judgments.[1] The IRS remitted this amount to the United States Attorney on June 7, 1984. On June 21, 1984, the government filed in District Court an application to apply these seized funds to the judgments. The money was placed in the registry of the District Court pending resolution of the matter. The Court ordered notice of the application served on Brown, Grandstaff, and the First National Bank of Tucson.

On July 9, 1984, Brown moved to dismiss the government's application, asserting that the District Court was without subject-matter jurisdiction. Brown also contended that the transfer between government agencies was illegal and unauthorized, that the government's application was time-barred, and that the government had failed to state a claim upon which relief could be granted. Neither Grandstaff nor the First National Bank of Tucson challenged the government's application.[2] On November 26, 1986, the Court entered an order indicating that the property was "condemned and forfeited" to the United States. Brown filed notice of appeal on December 11, 1986.

### II.

### A.

As a threshold matter, the government contends that this appeal should be dismissed as untimely. Brown filed his notice of appeal fifteen days after entry of the order from which he appeals. The United States contends that this is a criminal matter governed by Fed.R.App.P. 4(b), which provides that a notice of appeal in a criminal case must be filed in the District Court

---

1. The total represented a $63,000 judgment against Brown and a judgment for $61,729.53 against Grandstaff. The government had seized $1,270.47 from Grandstaff at the time of his initial arrest on July 28, 1980. That money was held by the FBI as evidence until August 19, 1983, when the government sought an order applying it to the judgment on Grandstaff's

bond. The order was entered September 16, 1983.

2. Whether the notices of the application served on Grandstaff and the First National Bank of Tucson were sufficient, and whether any claim by these parties to the money involved in this case is barred, are questions not before us, and as to which we express no view.

within ten days. Rule 4(a)(1) provides that notice of appeal may be filed within sixty days in a civil case to which the government is a party.

The great weight of authority is contrary to the government's position. The single case cited by the government, *United States v. Jones*, 567 F.2d 965 (10th Cir. 1977) (per curiam), was disavowed by the Tenth Circuit in *United States v. Brouillet*, 736 F.2d 1414 (10th Cir.1984) (en banc). In *Brouillet*, the Tenth Circuit acknowledged that four other circuits had disagreed with the reasoning of *United States v. Jones*. See *United States v. Roher*, 706 F.2d 725, 726–27 (5th Cir.1983); *United States v. Jackson*, 691 F.2d 478, 479 (11th Cir.1982); *United States v. Martinez*, 613 F.2d 473, 482 n. 30 (3d Cir.1980); *United States v. Plechner*, 577 F.2d 596, 597–98 (9th Cir. 1978). *Cf. United States v. Santiago*, 826 F.2d 499, 502–03 (7th Cir.1987) (appeal by surety from bond forfeiture is civil in nature).[3]

In *Brouillet* the Tenth Circuit was persuaded that forfeiture of a bail bond is "essentially a civil proceeding arising from a criminal one, similar to an action to collect a criminal fine." *Brouillet*, 736 F.2d at 1415 (citations omitted). We agree. We note, in addition, that *Brouillet* and the cases cited above refer to appeals from orders forfeiting bail. In this case, it is not the March 11, 1981, order forfeiting bail that gives rise to the appeal, but rather the order applying seized funds to satisfy the forfeiture judgment. Because this case involves collection on the judgment, a step even further removed from the criminal process than the bail-forfeiture proceeding, the civil rule regarding notice of appeal seems even more appropriate. *Cf. United States v. Ewing*, 19 F.2d 378, 379 (N.D. Miss.1927) (proceeding by way of judgment nisi and scire facias to recover on bail bond is a civil proceeding).

### B.

Brown contends that the transfer of funds from the IRS to the United States Attorney was improper, and the District Court was consequently without authority to enter its order. Citing 28 U.S.C. § 2463,[4] he characterizes the issue as one of subject-matter jurisdiction. Before the District Court, the government asserted that the transfer was accomplished through 28 U.S.C. § 1962, which provides that judgments of district courts are liens on property within the state, and Iowa Code § 626.26 (1983), the Iowa garnishment statute. On appeal, the government contends the transfer was in accordance with Treasury Regulation § 301.6343–1(b)(2) (1972).

The Internal Revenue Code provides that persons, other than the taxpayer against whom an assessment is made, may bring an action to assert an interest in property upon which the IRS has levied. 26 U.S.C. § 7426. In addition, section 6343 of the Code authorizes the IRS to release its levy or to return voluntarily specific property or an equal amount of money, if it is determined that the property has been wrongfully levied upon. The Secretary of the Treasury has prescribed procedures for requests for return of property under section 6343. Treas.Reg. § 301.6343–1(b)(2) (1972). If such a request is made within nine months from the date of the levy, the period during which a suit under section 7426 may be filed is extended. 26 U.S.C. § 6532(c). Accordingly, it seems clear that third parties may request the return of property under section 6343.

This Court's discussion in *St. Louis Union Trust Co. v. United States*, 617 F.2d 1293, 1302 (8th Cir.1980), illustrates the release by the IRS under section 6343(a) of

---

**3.** In *United States v. Santiago* the appellate court reprimanded attorneys for the government for relying on *United States v. Jones*, which had been overruled by *Brouillet* more than two years earlier. 826 F.2d at 502 n. 1.

**4.** This statute provides:

All property taken or detained under any revenue law of the United States shall not be repleviable, but shall be deemed to be in the custody of the law and subject only to the orders and decrees of the courts of the United States having jurisdiction thereof.

a levy on property to which another agency of the federal government asserted a claim.

Although the transfer of funds pursuant to the request of the United States Attorney under section 6343 was not improper, we do not see why such a formality was necessary. In the absence of constitutional or statutory prohibition, we think the United States has plenary power to transfer funds to which it is entitled from one pocket to another, or to decide which of several debts due from one individual will be satisfied with particular funds of the debtor.

The property was in the Southern District of Iowa independently of any action by the District Court. The Court then ordered the money deposited into its registry pending resolution of the matter. So far as Brown is concerned, the jurisdiction of the Court is not subject to challenge in that regard.

Brown's reliance on 28 U.S.C. § 2463 is misplaced. No action for replevin of funds was brought in this case, and there is no indication that section 2463 was intended to limit the discretion of the IRS with regard to release of its levy. The statutory prohibition against replevin is designed to protect funds or property in the possession of the IRS from being reclaimed by a taxpayer. It has nothing to do with a voluntary decision by the IRS to transfer funds or property to another federal agency.

### C.

■ Brown also argues that the District Court had no jurisdiction to effect forfeiture of property seized in another district. We disagree.

In the first place, the money on deposit was in the Southern District of Iowa when the order was entered. And in the second place, although the District Court used the term "forfeit," what actually happened was the execution of a bail-forfeiture judgment already entered, and the procedure followed was entirely correct for this purpose. Process to enforce judgments for payment of money is to be by writ of execution unless the court directs otherwise. Fed.R.

Civ.P. 69(a). The procedure on execution should be in accordance with the practice and procedure of the state in which the district court sits. *Id.; Weir v. United States,* 339 F.2d 82, 85–86 (8th Cir.1964); 12 C. Wright & A. Miller, Federal Practice & Procedure § 3012 (1973). Iowa law provides that judgments are to be enforced by execution. Iowa Code § 626.1 (1983). However, the Supreme Court of Iowa has held that execution is not the exclusive method of enforcing judgments; if the funds are in the custody of the court, the court may simply apply them in satisfaction of the judgment. *State v. Rudolph,* 240 Iowa 726, 37 N.W.2d 483 (1949); *Hornish v. Ringen Stove Co.,* 116 Iowa 1, 89 N.W. 95 (1902); *see also* Heiserman, *Procedures Available for Implementation of a Judgment in Iowa,* 42 Iowa L.Rev. 265, 273 (1957) ("Money in the hands of the clerk is subject to summary order of the court, on motion in the proceeding out of which the money came, or by a new application; no execution need be issued to effect its appropriation by the party entitled thereto.")

### D.

■ Brown also maintains that the government's action in 1984 to collect a judgment rendered in 1981 is time-barred. The answer is that the defenses of limitations and laches cannot be asserted against the sovereign. *See Guaranty Trust Co. v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788–89, 82 L.Ed. 1224 (1938).

### E.

■ Brown's final contention, which was raised in his initial response to the government's application, is that the government applied some of his money to the satisfaction of the judgment against Grandstaff. Brown asserts that $155,300 of the money seized at the time of his arrest belonged to him. If this assertion is true, only $31,982 belonged to Grandstaff and was available to be applied against the $61,729.53 judg-

ment against Grandstaff. The difference of $29,747.53 would have been satisfied, under those circumstances, with money belonging to Brown, rather than to the judgment debtor Grandstaff. "[T]he Government's right to seize and retain certain evidence for use at trial 'does not in itself entitle the state to its retention' after trial, much less its forfeiture." *United States v. Farrell*, 606 F.2d 1341, 1347 (D.C.Cir.1979) (quoting *Warden v. Hayden*, 387 U.S. 294, 307–08, 87 S.Ct. 1642, 1650–51, 18 L.Ed.2d 782 (1967)). In this case there was no finding by the District Court with regard to the ownership of the money at the time of the seizure, unless the Court's order itself is taken to be an implicit finding, which we do not think can be the case, because no evidentiary hearing on the question of who owned the money was ever held.

### III.

With respect to the claim of Brown, the conduct of the government and the action of the District Court were legally correct in all respects, with the exception of the unresolved issue of how much of the money Brown owned. We approve the District Court's approach and order in principle, but the case must go back for further proceedings to ensure that none of Brown's money is used to satisfy the judgment against Grandstaff. Accordingly, the judgment of the District Court is vacated, and the cause is remanded to that Court for further proceedings consistent with this opinion.

It is so ordered.