**STATE of South Dakota, Plaintiff and Appellee.**

v.

**Wayne Lee KRAGE, Defendant and Appellant.**

**No. 15047.**

Supreme Court of South Dakota.

Considered on Briefs May 22, 1986.

Decided April 29, 1987.

Thomas H. Harmon, Asst. Atty. Gen., Mark V. Meierhenry, on brief, Atty. Gen., Pierre, for plaintiff and appellee.

Thomas M. Tobin of Tonner & Tobin, Aberdeen, for defendant and appellant.

MORGAN, Justice.

This is an appeal by Keith and Violet Elton (Eltons) from the forfeiture of $3,000 allegedly posted by Eltons on behalf of defendant Wayne Krage (Krage). We affirm.

Krage was indicted by a grand jury in Brown County on two charges relating to the distribution and possession of cocaine. Pursuant to this indictment, Krage was arrested in Montana and returned to Brown County. Bail was set in the amount of $3,000 on each count. As part of the proceedings in this case, an order was entered by Judge Eugene A. Dobberpuhl, specifying the methods and conditions of release on bail. This order stated:

> The defendant will execute a bond in the amount of Six Thousand Dollars ($6,000) either secured by the undertakings of sufficient solvent sureties or by the deposit of an equal amount of cash or other security in lieu thereof.... It is hereby FURTHER ORDERED that the Defendant shall appear at Circuit Court on the 12th day of Sept., 1983 at 10 a.m. and at such other places and times as this Court may order or direct.

Acknowledgment of this order was signed by Krage.

Pursuant to this order, Krage executed an appearance bond, denominated a "non-surety" bond whereby Krage was the principal and obligor on the bond. Eltons, on their part, caused a cashier's check in the amount of $6,000 to be forwarded through the sheriff of Yellowstone County, Montana, to the sheriff of Brown County, South Dakota. Judge Dobberpuhl was designated as the payee. Judge Dobberpuhl endorsed the check and it was paid to the clerk of courts of Brown County as deposit in accord with Krage's bond.

Pursuant to a plea agreement, one count against Krage was dismissed and he pleaded guilty to the second count. He was sentenced by the trial court for a term of seven years. At Krage's request, execution of the sentence was delayed to a day certain after the Christmas holiday in 1983. On the specified date Krage failed to ap-

pear at the Brown County Jail to begin serving his sentence.

Subsequent to Krage's failure to appear to serve his sentence, State made a motion to forfeit the bond. Without hearing and without any further notice the trial court ordered the bond forfeited, finding that a material breach of the conditions of release had been shown and no good cause had been shown for such breach.

Eleven months later, Krage turned himself in to the authorities. Following this, Eltons petitioned the trial court to set aside the forfeiture of the bond as provided by SDCL 23A–43–22. Following a hearing, the trial court ordered that $3,000, being the original amount deposited for the dismissed count, should be returned to the clerk of courts who was then instructed to pay the same to counsel for defendant Krage.* The motion to return the bond money on the count under which Krage was convicted was denied. Eltons appeal the denial of this motion.

We first note that the provisions of South Dakota's bail chapter, SDCL 23A–43, are taken in the most part from Federal Rule of Criminal Procedure 46. Absent South Dakota authority, we may look to the federal decisions for guidance.

■■ Initially, State contends that this court is without jurisdiction to hear this appeal. This assertion is based on two separate grounds. State first asserts that the trial court had no jurisdiction to reopen a criminal matter to address a civil matter. It is true that: "A bail bond in a criminal action is a form of contract between the government on the one part and the accused and his surety on the other.... This penalty is one for damages and is deemed civil, not criminal, in nature." *United States v. Barger,* 458 F.2d 396 (9th Cir. 1972). However, it is also noteworthy that "[a]n action to enforce a bond forfeiture, even if considered civil in nature, is a case arising under the criminal laws and is governed by the rules of criminal procedure...." *United States v. Jones,* 567 F.2d 965, 967 (10th Cir.1977). What State

apparently contends is that it was proper for State to move for forfeiture of the bond in this case under the provisions of SDCL 23A–43–21, but for some reason it is improper for the court to entertain a motion to set aside that forfeiture under SDCL 23A–43–22. Apparently the Attorney General's Office is unaware of the procedure for forfeiture of bail bonds as will be hereinafter more fully discussed. Suffice it to say at this time that the record does not disclose that this bond has ever been finally forfeited and, further, that SDCL 23A–43–24 specifically authorizes a court to remit a bond *after* the entry of the final judgment of default (forfeiture). We deem this argument wholly without merit.

■■ State also suggests that since the judgment of conviction was entered on December 13, 1983, and the order forfeiting bond was entered on January 4, 1984, the motion to set aside forfeiture of the bail filed on December 24, 1984, was untimely because the time for appeal of the judgment of conviction and the order for forfeiture had long passed. This rather obtuse reasoning fails because the motion to set aside the forfeiture under SDCL 23A–43–22 does not remotely approximate an appeal. Rather, it is a statutory proceeding addressed to the trial court that entered the forfeiture. If it is State's claim that the motion was untimely filed, and that Eltons were guilty of laches, that is not a jurisdictional question but is rather a question that should have been brought before the trial court below, which State failed to do. That issue is not preserved for appeal.

Initially, Eltons claim that bail could not be legally forfeited because they were not mailed copies of State's petition requesting forfeiture, and thus were not given proper notice. In this regard, we first examine the question whether Eltons were entitled to notice under the circumstances of this case. It is a very close question. The appearance bond was signed by Krage in his individual capacity with no mention of Eltons as sureties or co-obligors. The money was received in the form of a cashier's

---

* In the order Eltons were referred to as the obligors.

check in which Eltons were named as remitters. As a general rule

[m]oney deposited by a third person ... is regarded as the money of the accused for all purposes of the deposit. Thus a deposit ... by a third party may be liable for a fine levied in the matter where the statute permits. And if the funds are forfeited by order of the court to the state and the defendant cannot defeat the forfeiture, neither can the third-party depositor.

8 Am.Jur.2d *Bail and Recognizance* § 93, at 654 (1980). In this instance the check was drawn to Judge Dobberpuhl, who was the committing magistrate, and he endorsed it. This, in itself, is not enough to persuade us that we should consider Eltons to be obligors. However, the trial judge apparently considered them as obligors because he granted them a hearing and designated them as obligors in his order remitting half of the bail.

We earnestly urge all committing magistrates who are approving bail bonds to see that the parties are properly designated. While it is certainly to be preferred that a cash deposit be considered the money of the defendant, that is not always the case. It is entirely conceivable that the person who puts up a cash bond does not want to make a loan to the defendant. He may want to protect his funds from being used for payment of any fine imposed and he may fear that if the bond is satisfied the funds will be paid to the defendant and he will never see his money again. Nevertheless, the defendant is entitled to be released on bail if he can get sureties or obligors who will post the money without making a loan to him. While we are reluctant to attribute obligors status to Eltons, because of the posture of the case as it comes to us, we will assume, without so holding, that they were obligors and examine the issues on the merits.

On their first issue, the legality of the forfeiture of the bond without notice to them, Eltons cite us only to the provisions of SDCL 23A–43–21 through –24 without any case citations to support their right to prevail under these statutes. We find that

these statutes are modeled on the federal bail bond act and are substantially similar in nature. We then examine the procedures called for by these statutes. They call for three steps: (1) an automatic forfeiture upon default of the defendant in appearing; (2) a motion by the state for judgment of default, *upon notice to all obligors;* (3) an opportunity for obligors to seek to have the forfeiture set aside by motion made before or after entry of a judgment of default. We examine these steps in detail.

■ As to step one, the Federal Rule of Criminal Procedure 46(e)(1) requires the district court to declare a forfeiture if there is a breach in the condition of a bond. *Accord* SDCL 23A–43–21. This is a mandatory rule, with no discretion vested in the court in determining whether the bond should be forfeited if there has been such a breach. No notice of hearing on the mandatory forfeiture is required. *United States v. Roher,* 706 F.2d 725 (5th Cir. 1983); *United States v. Vera-Estrada,* 577 F.2d 598 (9th Cir.1978); *Babb v. United States,* 414 F.2d 719 (10th Cir.1968).

■ Notice must be given to the obligors, however, when the government takes the second step, a motion for a judgment of default. *Roher, supra; Vera-Estrada, supra.* Such notice may be served upon the clerk of the court as agent for the obligor. Prior to the entry of a judgment of default, however, the court may, on motion by the obligor, direct that the forfeiture, or any part of it, be set aside upon such conditions as the court may impose if it appears that the ends of justice do not require the enforcement of the forfeiture, or all of it. Fed.R.Crim.Proc. 46(e)(2) (SDCL 23A–43–22). Unless the forfeiture is set aside, the court then enters a judgment of default after which execution on the bond, if necessary, may issue. Fed.R.Crim.Proc. 46(e)(3) (SDCL 23A–43–23). Even when a judgment of default has been entered, the court may, on motion by the obligor still remit the bail in whole or in part under the conditions applying to the setting aside of forfeiture. Fed.R.Crim.Proc. 46(e)(4) (SDCL 23A–43–24). *See generally United*

*States v. Gutierrez,* 771 F.2d 1001 (7th Cir.1985). Under these rules we see no distinction between a defendant who posts his own bond and third-party obligors. Both are given the same rights under these rules.

We then review the proceedings in this case in light of the rules as explicated above. It appears that the trial judge followed the dictates of SDCL 23A–43–21 (Rule 46(e)(1)) and ordered the mandatory forfeiture following Krage's failure to appear to begin serving his sentence. Notice was not given to the obligors because it is not required until the state files a motion for a judgment of default under SDCL 23A–43–23 (Rule 46(e)(3)). Such motion was never filed nor was the bond finally forfeited, thus Eltons' right to notice never materialized prior to the proceeding that is before us for review. The rules set no time requirements for filing such motion nor are there time requirements set for bringing an action to set aside the forfeiture or to remit any or all of the judgment. *See Babb, supra.* Certain statutes of limitation may apply, however. We caution the trial courts and state's attorneys that the forfeiture of a bond is not final until the trial court enters a default judgment in accordance with SDCL 23A–43–23 (Rule 46(e)(3)).

In this instance, of course, the Eltons triggered their own hearing, as they have a right to do. The trial court considered their motion to set aside the forfeiture and returned $3,000 of the bond. We deem that all requirements for notice and hearing on the petition for default under the statutes have been waived by the Eltons' actions and that they have received an appropriate hearing.

Eltons, as their second issue on appeal, contend that the trial court erred by not setting aside the entire forfeiture under the facts and circumstances of this case. The facts and circumstances they stress are that Krage did make all appearances that were required of him before his conviction and that is all they intended to ensure by their bond. They argue that they should not be penalized due to the

courtesy extended to Krage by the trial court in allowing him to remain at large subsequent to sentencing. The bond itself specifically provides: "It is agreed and understood that this is a continuing Bond (including any proceeding on appeal or review) which shall continue in full force and effect until such time as the undersigned are duly exonerated." Admittedly, Eltons did not sign that document, but if they claim to be obligors thereunder they have to be bound by its terms. They fail to cite us to any authority to support any argument that the trial court erred in extending the bond to cover Krage's appearance to begin serving the sentence theretofore imposed on him.

Finally, on this issue, we point out that in determining whether or not to grant relief from a forfeiture, the trial court is granted wide discretion. *Roher, supra; United States v. Cervantes,* 672 F.2d 460 (5th Cir. 1982); *United States v. Stanley,* 601 F.2d 380 (9th Cir.1979). The burden of establishing grounds for a setaside of a forfeiture order is upon the party challenging the forfeiture. *Cervantes, supra.* An appellate court should not disturb the district court's judgment unless there is a clear abuse of discretion. *Roher, supra; Cervantes, supra.* We find no clear abuse of discretion in this case.

We affirm the order of the trial court but remand with instructions to enter a judgment of default for the sum of $3,000, the balance of the bond after the set aside.

HENDERSON, J., and FOSHEIM, Retired Justice, concur.

WUEST, C.J., and SABERS, J., concur specially.

MILLER, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.

WUEST, Chief Justice (concurring specially).

I would not treat the Eltons as obligors. They never signed the appearance bond nor obligated themselves for anything. As

stated in the majority opinion, as a general rule money deposited by a third person is regarded as the money of the accused. In my opinion, the trial courts of this State should not accept money from third persons and treat them as obligors. Let the third person or persons loan the money to the defendant who obligates himself to appear, and if he does not appear, the court deals with the defendant and does not have to deal with phantom obligors.

While I would have held that the Eltons were not obligors, I concur in the reasoning of the majority opinion on the forfeiture procedures and the affirmance of the trial court.

I am hereby authorized to state that Justice Sabers joins in this special concurrence.